Franklin DEXTER and Fiduciary Trust Company as Executors under the Will of Francis W. Palfrey

v.

UNITED STATES of America.

Civ. A. No. 57-665.

United States District Court
D. Massachusetts.

March 27, 1958.

---

1. Now 10 U.S.C. §§ 6150, 6323, 6483.

2. Now 10 U.S.C.A. §§ 772, 6381.

Rhodes D. Lockwood and Sherman N. Rosen of Choate, Hall & Stewart, Boston, Mass., for plaintiffs.

Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., and Robert W. Kernan, Attorney, Department of Justice, Washington, D. C., for the United States.

**WYZANSKI, District Judge.**

This is an action to recover federal estate tax paid by plaintiffs as executors of the will of Francis W. Palfrey. The essence of the controversy is whether under a provision in the third paragraph of Article Fourth of the will the testator's widow has such an unlimited power to invade the principal of a trust that the trust property should be included in the estate's computation of the marital deduction under the provisions of § 812(e)(1)(F) of the Internal Revenue Code of 1939, 26 U.S.C. § 812(e)(1)(F).

The relevant statutory provision was added by § 361 of the Revenue Act of 1948, c. 168, 62 Stat. 110, and reads as follows:

"§ 812. NET estate

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\*  \*  \*  \*  \*

"(e) (1) *Allowance of marital deduction*

"(A) *In general.*—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

\*  \*  \*  \*  \*

"(F) *Trust with power of appointment in surviving spouse.* In the case of an interest in property passing from the decedent in trust, if under the terms of the trust his surviving spouse is entitled for life to all the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such

surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the surviving spouse—

"(i) the interest so passing shall, for the purposes of subparagraph (A), be considered as passing to the surviving spouse, and

"(ii) no part of the interest so passing shall, for the purposes of subparagraph (B)(i), be considered as passing to any person other than the surviving spouse.

"This subparagraph shall be applicable only if, under the terms of the trust, such power in the surviving spouse to appoint the corpus, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."

Under the quoted provisions a deduction is allowed from the gross estate of a married person for property given in trust for the benefit of a surviving spouse if but only if it meets certain conditions, including the condition that the spouse's power to appoint or invade the corpus of the trust "is exercisable by such spouse alone and in all events." See also Treasury Regulations 105, promulgated under the Internal Revenue Code of 1939 § 81.47a, as added T.D. 5699, 1949–1 Cum. Bull. 181 particularly (c), (4).

In the case at bar the nub of the question is whether Dr. Palfrey did give to his widow not merely a life estate but also a right to invade the principal "alone and in all events."

There is no doubt that Mrs. Palfrey was entitled alone and in all events to some payments during her life. In Article Fourth paragraph 1 of his will Dr. Palfrey provided that during the lifetime of his wife "I *direct* my trustees to pay from the net income and from the principal of the trust * * * to * * * my * * * wife for her support, maintenance and comfort the sum of one

thousand dollars ($1,000.) in advance on each quarter date * * *."

But with respect to the corpus the situation is different. In the third paragraph of the same Article Fourth Dr. Palfrey provided as follows:

"(3) In addition to the payments of income and principal from the trust funds hereunder, I authorize and empower my trustees to make from time to time from the principal of said trust fund such payments to or for the benefit of my wife, Lucy Hannah Palfrey, as she may request in writing but without charging interest, and to my children or any of them or their representatives as specified in subparagraph (2) of this clause Fourth as in the opinion of my said wife during her life, and thereafter of my trustees, I should devote to the purposes in question if I were living, and any such payment to my children or their said representatives shall be charged with interest at 5% against the share of principal to which the child in question or his or her representatives may ultimately become entitled on distribution as hereinafter provided, but in case no share of principal shall become vested in such beneficiary, or in his or her said representatives, then any such payment of principal and interest accrued thereon shall be charged generally to the principal of the trust fund. I urge upon my trustees in exercising the powers conferred upon them by this paragraph to bear in mind my earnest wish that it is my chief wish to protect my wife against privation rather than to maintain a maximum fund for final distribution."

It is plaintiffs' contention that this language is ambiguous, and that, construed in the light of other evidence, this paragraph directs the trustees to pay the widow such part of the principal as she at her pleasure requests. Their argument is that the phrase "authorize and empower" constitutes an absolute direc-

tion to the trustees to respect any demand that the widow might make for invasion of the principal, and does not merely empower the trustees, if they see fit, to accede to the widow's request. In making this contention the plaintiffs point out that the phrase "authorize and empower" governs the trustees in making not merely payments to the widow but also payments to the children, and that so far as payments to the children are concerned there can be no doubt that the phrase directs the trustees if Mrs. Palfrey is alive to follow a certain course of action.

Ingenious as is this contention it cannot prevail. In making payments to the widow herself under paragraph 3 the trustees are told to "bear in mind my [the testator's] earnest wish  *  *  * to protect my wife against privation rather than maintain a maximum fund for final distribution." This implies that the trustees have a discretionary right to refuse to make a payment which the widow earnestly desires, although the testator hopes this right will not be too readily invoked. Moreover, it is clear that when the testator did not wish the trustees to have any discretion with respect to his widow, he knew how to use mandatory phrases. An example is the clause "I direct my trustees" used in paragraph 1 of Article Fourth.

■   In short, there is no ambiguity in the third paragraph of Article Fourth of the will. There being no ambiguity this Court cannot admit parole testimony for the purpose of throwing light on the testator's intent or for the purpose of impeaching the text of the will. Agricultural National Bank v. Schwartz, 325 Mass. 443, 448, 91 N.E.2d 195, 32 A.L.R. 2d 289; Mass.G.L. (Ter.Ed.) c. 191, §§ 1, 7; Wigmore, Evidence, 3rd Ed., § 2471.

Under the plain provisions of Dr. Palfrey's will, his widow's right to appoint or invade the corpus depends upon the discretion of his testamentary trustees. She has no power "exercisable by" her "alone and in all events."

Judgment for defendant.